

# THE ATTORNEY GENERAL

# OF TEXAS

**JOHN BEN SHEPPERD**
ATTORNEY GENERAL

AUSTIN 11, TEXAS

May 31, 1956

Hon. J. Byron Saunders, Chairman
Board of Insurance Commissioners
Austin, Texas

Opinion No. S-200

Re: Whether book value or market value
of out of State securities of a wholly
owned subsidiary held by an insur-
ance company should be used in com-
puting gross premium taxes under
Article 7064, V. C. S.

Dear Mr. Saunders:

Your letter requesting our opinion in reference to the captioned
matter reads, in part, as follows:

"The 1955 tax return of Western Casualty and Surety
Company, made for the purpose of computing gross pre-
mium tax under Article 7064 R.C.S., shows that the com-
pany had the highest percentage of its admitted assets in-
vested in the state of Kansas. Included in the securities
held in the state of Kansas is stock of the Western Fire
Insurance Company, a wholly-owned subsidiary of Western
Casualty and Surety Company. The book value of this stock
is shown at $1,924,700.00, while the market value is shown
at $6,680,755.92.

" . . .

"Premises considered, we would appreciate your
advice as to the proper basis for determining the amount
which Western Casualty and Surety Company has invested
in the stock of the Western Fire Insurance Company.
. . ."

Article 7064, Vernon's Civil Statutes, provides that every insur-
ance corporation other than life, at the time of filing its annual statement,
shall report

"... to the Board of Insurance Commissioners on
or before the first day of March of each year, the amount
that it had invested on the 31st of December, preceding, in
Texas securities as defined herein and the amount that it
had invested on said date in similar securities in the State
in which it had its highest percentage of admitted assets
invested, ... If the report of such insurance organiza-
tion as of December 31st preceding, shows that such or-
ganization had invested in Texas securities, as herein
defined, an amount which is not less than seventy-five per
cent (75%) nor more than eighty per cent (80%) of the
amount that it had invested in similar securities in the
state in which it then had the highest percentage of its ad-
mitted assets invested, its tax shall be 3.025% of such
gross premium receipts ..."

Subsequent provisions of the Act make the tax progressively
lower as the percentage of investment in Texas securities increases.

It is our opinion that the terms "the amount of such investments"
and "had invested" as used in Article 7064, supra, mean the initial amount
of money or money's worth used to purchase the security. The express
purpose of the Act is to encourage, by offering a lower tax rate, those in-
surance carriers subject to the Act to make investments in Texas securi-
ties. If the market value of the securities, which fluctuate in value, is to
be used in the determination of the amount of the investments, the purpose
of the Act would in a measure be defeated, in that the insurance carriers
would always be in doubt as to whether they had invested sufficient funds
in Texas securities in order to receive the benefit of a lower tax rate. Mar-
ket value fluctuates and the market value of securities is often a question of
opinion. We believe that the Legislature intended the amount the insurance
carriers "had invested" to be a certain and fixed amount. In fact, the pur-
chase price paid for a Texas security is in aid of the financial economy of
the State. An increase in the market value of the security would inure to
the benefit of the insurance carrier only.

To hold that the market value of a security determines the
amount invested would lead to absurd results. Article 9.02 of the Insurance
Code pertaining to title insurance provides, in part, as follows:

"Any corporation organized under this chapter having
the right to do a title insurance business may invest as
much as fifty (50%) per cent, of its capital stock in an ab-
stract plant or plants, ..."

The Court of Civil Appeals held in Kansas City Title Ins. Co. v. Butler, 253 S.W. 2d 318 (1952, writ ref. n.r.e.), that an abstract plant is a Texas security under the provisions of Article 7064. We give the following illustration to demonstrate that market value should not be used to determine the amount invested. A title insurance company has a capital stock of $100,000.00. It secures an abstract plant by expending $50,000.00. Thereafter the market value of the plant increases to $60,000.00. The title insurance company would be in violation of Article 9.02, supra, and in order to comply therewith would have to either increase its capital stock to $120,000.00, or dispose of a portion of its abstract plant. On the other hand, the market value of the plant decreases to $40,000.00. The company could then invest an additional $10,000.00 in such plant and wind up with 60% of its capital stock converted into such security, in violation of said article.

## SUMMARY

The purchase price of securities held by insurance companies should be used in computing the gross premium taxes under the provisions of Article 7064, V. C. S.

Yours very truly,

JOHN BEN SHEPPERD
Attorney General of Texas

By W. V. Geppert
W. V. Geppert
Assistant

APPROVED:

J. Arthur Sandlin
Reviewer

J. C. Davis, Jr.
Reviewer

L. W. Gray
Special Reviewer

Davis Grant
First Assistant

John Ben Shepperd
Attorney General